GOLDFARB *v.* BRUNER ET AL., PARTNERS, D. B. A.
BRUNER & REITER CO.

(Decided May 15, 1933.)

*Mr. Robert N. Gorman* and *Messrs. Nichols, Morrill, Wood, Marx & Ginter,* for plaintiff in error.
*Mr. Charles H. Elston,* for defendants in error.

HAMILTON, P. J.   George Bruner and Clifford Reiter, defendants in error here, plaintiffs below, were

partners in a bond and stock brokerage business in the city of Cincinnati.

In September, 1929, Nathan Goldfarb, plaintiff in error here, defendant below, employed the plaintiff brokers to buy for him fifty shares of the common stock of the Cities Service Company at the market price. The brokers executed the order and purchased the fifty shares of Cities Service stock at the price of $58.75 per share, and immediately notified Goldfarb of the purchase. The stock was transferred to Goldfarb and was received by the brokers, who tendered the stock to Goldfarb. At that time Goldfarb had a credit with the brokerage concern on an account amounting to approximately $859. Deducting the credit from the cost of the stock left an unpaid balance of $2,078.50.

Plaintiffs notified Goldfarb that they had the stock, and several times requested that he take it up and pay the balance due, or put up additional security, the brokers to hold the stock until the balance due on the purchase price had been paid. Goldfarb refused to take up the stock or put up any additional security.

Goldfarb's defense was that he ordered the brokers to sell fifty shares of Cities Service stock at a price of $41.75, and to credit the amount to his account; that the brokers failed to sell or dispose of the stock in accordance with his instructions, and the loss was due to their neglect and failure to execute his order to sell, and that the loss, if any, should be borne by the brokers.

The question of the order to sell grows out of a conversation had between Reiter, a member of the firm, and Goldfarb, over the telephone. It is in the record that, after frequent demands, Mr. Reiter, of the brokerage firm, called Goldfarb late in October and told him that, if he did not do something, they would have to sue him and get their money, and Reiter testified that Goldfarb responded: "Go ahead and sue." Gold-

farb testified that what he said was: "Go ahead and sell."

In December the brokers placed an order with a New York concern to sell the stock at $41.75. Whether or not Goldfarb gave the order to sell would not be material as to the authority, for the reason that the brokers, on Goldfarb's refusal to take the stock, could under the rules of stock transactions offer the stock for sale as collateral to their loan. The brokers testified that Goldfarb never gave the order to sell; that the placing of the stock on the market was of their own initiative.

The order to sell given by the brokers to the New York concern was left open until March 27th, following, when the brokers canceled the order to sell. Goldfarb never having taken up the stock or produced additional security for the balance of the purchase price, the plaintiff brokers brought this action to recover the balance due, and tender the stock, which is in their possession.

It appears from the record that, while the stock was in the possession of the brokers, it was in the name of Goldfarb, having been transferred to him on the books of the company; that several dividend checks were issued, made payable to Goldfarb, which he received and cashed.

The question was submitted to the jury by the trial court as to whether or not Goldfarb did give an order to sell. If it believed Goldfarb, he gave the order to sell. If it believed the brokers, no such order was given, and the placing of the stock on the market was on the initiative of the brokers. The jury by their verdict found for the plaintiff brokers, and this is justified under the evidence produced.

Considerable authority is presented in the brief for plaintiff in error on the question of the failure of brokers to carry out instructions given by a customer. In view of the fact that the jury could well find no such

instructions were given, these propositions and the law advanced on the question do not require discussion.

It is suggested that, if the open order to sell, placed by the brokers, was made of their own volition, and not upon Goldfarb's suggestion, he having made no complaint after receiving notice must have ratified their act by his silence and acquiescence, and that it could not be altered by his silence. Again, we are met with the proposition that the claim of Goldfarb was that he ordered the brokers to sell at $41.75. The evidence is that the price never reached $41.75 during the time that the selling order was open. In fact, the price declined very materially, and the brokers continued to call upon Goldfarb for additional protection for the account. On Goldfarb's refusal to put up any additional security, the brokers had the right to order the sale of Goldfarb's collateral at a price which they felt was sufficient to repay them. This necessarily carried the right to cancel the order of sale, as the stock was their collateral security.

The law is that a broker may require the payment of the customer's indebtedness to him, or may close out the customer's account on exhaustion of the margin provided for the protection of the account. He may sell the collateral and apply the same to the payment of the debt, or he may hold the stock and sue for the purchase price. After making an effort to sell the stock, and being unable to realize an amount sufficient to protect the account, they were within their rights to cancel the order to sell, and to sue on the account. A full discussion of these rules may be found in Meyer on Stock Brokers & Stock Exchanges, Section 90 et seq.

It is suggested that the court erred in charging the jury. The portion complained of is embodied in the following quotation from the charge: "If you should find by the evidence that that order was given (and not substantially complied with by the plaintiffs herein) then and in that event the plaintiffs would be

obliged *within a reasonable time* thereafter to sell the stock at $41.75 if the market reached that price after the order was given by the defendant."

It is argued that the court in charging "the plaintiffs would be obliged within a reasonable time thereafter to sell the stock" injected an issue in the case which was not in the case, that there was no question of "reasonable time." While we are of opinion that the court did inject a proposition which was not an issue in the case, it certainly did not harm the defendant, plaintiff in error here. The facts are that the open order to sell, claimed to have been given by Goldfarb, was to sell at $41.75. Moreover, the brokers were not required under the law to let their order to sell stand, in the absence of specific instructions from the customer. In other words, they could withdraw the order at any time their security became impaired. So the charge of the court would impose a duty on the brokers to sell within a reasonable time when no such duty obtained. The charge was therefore more harmful to plaintiffs than to the defendant. The defendant was fully protected in the charge of the court, wherein the court charged the jury as follows:

"If you should find from the evidence the plaintiffs have sustained no loss, as shown by the evidence, providing you find that an order was given, and providing you find, as shown by the evidence, that the plaintiffs failed to carry out their instructions, then, of course, your verdict under those circumstances should be for the defendant. * * *

"If you should find that the market, at the time the plaintiffs should have sold, under instructions from their client, exceeded, if they had used due diligence and care in following the instructions, the amount they paid for the stock, then of course your verdict under those circumstances should be for the defendant."

This charge fully protected the defendant as to his rights under the law and the evidence, and the fact

that the court charged on the question of reasonable time could not prejudice defendant's rights.

We find no prejudicial error in the record, and the judgment is affirmed.

*Judgment affirmed.*

CUSHING and ROSS, JJ., concur.